UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORENA D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C22-1029-SKV <br><br> ORDER AFFIRMING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff was born in 1973, has a high school diploma and certification as a technical editor, and has worked as a word processor and technical editor. AR 1388-89. Plaintiff was last gainfully employed in 2016. AR 286.

In June 2016, Plaintiff applied for benefits, alleging disability as of May 3, 2016, with a date last insured (DLI) of December 31, 2021. AR 202-14, 1340. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. AR 125-31, 133-40.

After the ALJ conducted a hearing in February 2018 (AR 41-92), the ALJ issued a decision finding Plaintiff not disabled. AR 12-40.

The Appeals Council denied Plaintiff's request for review (AR 1-6), and Plaintiff sought judicial review. The U.S. District Court for the Western District of Washington granted the parties' stipulation to reverse the ALJ's decision and remand for further administrative proceedings. AR 1454-60. On remand, a different ALJ held a hearing in October 2021 (AR 1365-1404), and subsequently issued a decision finding Plaintiff not disabled. AR 1338-53.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since her alleged onset date.

**Step two**: Through the DLI, Plaintiff had the following severe impairments: rheumatoid arthritis, diabetes, irritable bowel syndrome, headaches, depression, anxiety, and post-traumatic stress disorder.

**Step three**: Through the DLI, these impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**: Through the DLI, Plaintiff could perform light work with additional limitations: she could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, and crouch. She could not crawl. She could engage in frequent gross manipulation (*i.e.*, handling) and occasional fine manipulation (*i.e.*, fingering). She needed to avoid concentrated exposure to non-weather-related extreme cold and heat. She needed to avoid all exposure to unprotected heights and hazardous machinery. She could perform simple, routine, and repetitive tasks requiring only occasional decision making and occasional changes in the work setting.

**Step four**: Through the DLI, Plaintiff could not perform past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed through the DLI, Plaintiff was not disabled during the adjudicated period.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

1  AR 1328-53.

2       The Appeals Council did not assume jurisdiction of the case, and Plaintiff appealed the
3  final decision of the Commissioner to this Court.  Dkt. 1.

## LEGAL STANDARDS

5       Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social
6  security benefits when the ALJ's findings are based on harmful legal error or not supported by
7  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.
8  2005).  As a general principle, an ALJ's error may be deemed harmless where it is
9  "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,
10 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to
11 determine whether the error alters the outcome of the case."  *Id*.

12      Substantial evidence is "more than a mere scintilla.  It means - and means only - such
13 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
14 *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d
15 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving
16 conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*
17 *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record
18 as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the
19 Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is
20 susceptible to more than one rational interpretation, it is the Commissioner's conclusion that
21 must be upheld.  *Id*.

22 //

23 //

## DISCUSSION

Plaintiff argues that the ALJ erred in assessing the opinion of her treating physician Gregory Gardner, M.D.[3] The Commissioner contends the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

In this case, the ALJ summarized Dr. Gardner's 2016 opinion, which indicate that due to rheumatoid arthritis, Plaintiff was severely limited in her ability to lift/carry, concentrate, stand, walk, sit, and use her hands, and that she would miss at least four days of work per month. AR 1348 (citing AR 542-43). Specifically, Dr. Gardner opined that Plaintiff could walk only one block without needing to rest or experiencing significant pain, could stand or walk for a total of 15 minutes in an eight-hour workday, could sit for only two hours in an eight-hour workday, and would need to "frequently" take 30-minute breaks throughout a workday. AR 542. Dr. Gardner stated that Plaintiff could use her right arm only 10% of the day for handling, fingering, or reaching, and could use her left arm for 20% of the day for those activities. *Id*.

The ALJ found this opinion to be inadequately supported because Dr. Gardner did not provide any narrative explanation to support the severe limitations he identified. AR 1348. The

---

[3] Because Plaintiff applied for benefits before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 apply to the ALJ's consideration of medical opinions.

ALJ also found that Dr. Gardner's conclusions as to physical limitations were inconsistent with Plaintiff's treatment record, which shows many normal or mild physical findings as to Plaintiff's arms, shoulders, and hands, and indicates that Plaintiff's rheumatoid arthritis symptoms improved with a medication that Plaintiff started in June 2017 and with a 2018 course of physical therapy.  *Id*. (citing AR 1201, 1894, 1927, 1944, 1994, 2029, 2032, 2071, 2114, 2232, 2485, 2524-25, 2596, 2660, 2670, 2726, 2745, 2825, 2833, 2863, 2985, 3047, 3062, 3127, 3134, 3145).  The ALJ also found that Dr. Gardner's opinion was inconsistent with the treatment record as to Plaintiff's ability to use her legs because the records from 2017 through 2021 indicate that Plaintiff generally presented with no leg edema and normal gait.  AR 1348 (citing AR 1329, 1886, 1893, 1927, 1984, 2090, 2647, 2659, 2715, 2766, 2795, 2806, 2824, 2833, 2852, 2985, 3071, 3134).  Lastly, the ALJ found that Dr. Gardner's conclusions regarding Plaintiff's concentration deficits and absenteeism are inconsistent with the treatment record showing many normal mental findings, and the ALJ presumed that Dr. Gardner's opinion on these issues was based on Plaintiff's self-report, which the ALJ had discounted earlier in the decision.  AR 1349.  For all of these reasons, the ALJ gave little weight to Dr. Gardner's opinion.  AR 1348-49.

Plaintiff challenges the ALJ's reasoning on several grounds.  Plaintiff argues that the ALJ first erred in discounting Dr. Gardner's opinion for lack of explanation, because such reasoning "has long been rejected in the Ninth Circuit[.]" Dkt. 8 at 6.  This argument is not well-founded because although some Ninth Circuit opinions find such reasoning to lack legitimacy, the Ninth Circuit has not uniformly disapproved of this rationale.  *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[T]he ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996))).  Moreover, regulations applicable to this case favor an explained

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 5

opinion over an unexplained opinion.  *See, e.g.*, 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Plaintiff has failed to show that this portion of the ALJ's reasoning lacks legitimacy.

Plaintiff contends that, rather than discount the opinion as unexplained, the ALJ should have considered Dr. Gardner's opinion in the context of his treatment notes to determine whether his conclusions are supported by clinical findings found there.  Dkt. 8 at 7 (suggesting that the ALJ failed "to consider that Dr. Gardner's opinion *could* be supported by the ample evidence he had gathered throughout his extensive treatment of Plaintiff during the span of over five years" (emphasis added)).  But the ALJ did this: the ALJ considered Dr. Gardner's opinion in the context of the treatment record and found that it was inconsistent with the clinical findings and Plaintiff's demonstrated improvement.  AR 1348-49.  The ALJ did not err in discounting Dr. Gardner's opinion to the extent it is inconsistent with the record.  *See Smartt v. Kijakazi*, 53 F.4th 489, 496 (9th Cir. 2022) (affirming an ALJ's discounting of a treating physician's opinion that was inconsistent with the treatment record showing normal findings and evidence of improvement); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in rejection of physician's opinions).

Plaintiff next argues that the ALJ's finding of inconsistency depends on impermissible cherry-picking, accusing the ALJ of relying on treatment notes that support her conclusions and ignoring evidence that detracts from it.  Dkt. 8 at 12-18.  Plaintiff has not, however, adequately supported this accusation with reference to evidence that corroborates Dr. Gardner's opinion and undermines the ALJ's interpretation of the evidence.  For example, Plaintiff emphasizes that Dr.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 6

1   Gardner treated her for rheumatoid arthritis from June 30, 2016, to July 24, 2017 (Dkt. 8 at 8),

2   but the ALJ acknowledged this treating relationship and summarized Plaintiff's treatment during

3   this time period. *See* AR 1345. Plaintiff goes on to summarize various treatment notes dating to

4   the period before she experienced improvement with Xeljanz (Dkt. 8 at 8), but again, these notes

5   do not undermine the ALJ's finding that Plaintiff experienced significant improvement with that

6   medication. *See* AR 1345.

7   Next, Plaintiff points to various complaints she raised to her providers between October

8   23, 2017, and February 14, 2019 (Dkt. 8 at 9-10) and between August 31, 2020, and September

9   20, 2021 (Dkt. 8 at 10-11), but the ALJ acknowledged that Plaintiff continued to report some

10  symptoms during this time period and, as noted above, included many limitations in the RFC

11  assessment. *See* AR 1343-45. Plaintiff emphasizes that she reported foot pain to a podiatrist in

12  October 2021 (AR 3093), and that treatment note indicates that the podiatrist recommended new

13  shoes with inserts due to biomechanical abnormality. *See* AR 4000. This evidence does not

14  undermine the ALJ's interpretation of the record as demonstrating improvement in Plaintiff's

15  rheumatoid arthritis with treatment.

16  Lastly, Plaintiff posits that Dr. Gardner's concentration and absenteeism limitations were

17  supported by her physical symptoms, which "would no doubt impact [Plaintiff's] ability to meet

18  the demands of fulltime work without excessive breaks and absences beyond what would be

19  tolerable for competitive employment." Dkt. 8 at 16. Dr. Gardner did not offer this explanation

20  himself, however; as the ALJ noted, Dr. Gardner did not identify any particular foundation for

21  these limitations. *See* AR 543-44. Moreover, as described *supra,* the ALJ reasonably found that

22  the treatment record indicated that Plaintiff's rheumatoid arthritis "substantially improved" with

23

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 7

treatment after Dr. Gardner rendered his opinion. AR 1345, 1348-49. This argument does not, therefore, bolster Plaintiff's assignment of error.

Plaintiff also notes that the record shows that she experienced emotional distress (Dkt. 8 at 17) and contends that her counseling notes could support Dr. Gardner's opinion as to concentration and absenteeism (Dkt. 8 at 17), but the ALJ acknowledged these symptoms and included significant mental limitations in the RFC assessment. *See* AR 1343-44, 1347. Notably, Plaintiff has not pointed to indicating that her concentrations deficits were so extreme as to "constantly" prevent her from completing simple tasks, as Dr. Gardner opined. *See* AR 542. Nor has Plaintiff pointed to evidence directly relating to Dr. Gardner's opinion that she would miss at least four days of work per month. *See* AR 543. Plaintiff has failed to show that the ALJ impermissibly cherry-picked evidence in finding Dr. Gardner's mental limitations to be inconsistent with the record, while ignoring the evidence that corroborates the limitations.

In these ways, Plaintiff has not met her burden to show harmful legal error in the ALJ's assessment of Dr. Gardner's opinion. She has not identified material evidence that was overlooked by the ALJ or that undermines the ALJ's interpretation of the evidence, and thus has failed to support her allegation of cherry-picking. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. May 17, 2022) ("[A] rule requiring ALJs to address every argument or piece of evidence, however meritless or immaterial, would unduly detain ALJs in their orderly consideration of Social Security disability benefits claims."). The Court declines any invitation to reweigh the evidence, and instead finds that the ALJ's reasons for discounting Dr. Gardner's opinion are supported by substantial evidence. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) "[T]he key question is not whether there is substantial evidence that could

1  support a finding of disability, but whether there is substantial evidence to support the

2  Commissioner's actual finding that claimant is not disabled.").

3                                          **CONCLUSION**

4         For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and

5  this case is **DISMISSED** with prejudice.

6         Dated this 17th day of February, 2023.

                                                    *[signature]*

9                                           S. KATE VAUGHAN
                                            United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 9